ANDREW R. QUINIO, Cal. Bar No. 288101
Email: AQuinio@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

SAMANTHA R. ROMERO-DREW, Cal. Bar No. 344476
Email: SRomero@pacificlegal.org
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ERICA JIMENEZ, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> DR. ERICA PAN, in her official capacity as Director of the California Department of Public Health, et al., <br><br> Defendants. | No. 2:26-cv-03500-SPG-SP <br><br> **PLAINTIFF'S COMBINED REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:  May 13, 2026 <br> Time:  1:30 p.m. <br> Place:  Courtroom 5C, 5th Floor <br> Judge: Hon. Sherilyn Peace Garnett <br> Trial Date: Not Set <br> Action Filed: April 2, 2026 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .............................................................................................1

    I.    Mrs. Jimenez Has Standing.......................................................................2

    II.    Mrs. Jimenez Is Likely to Succeed on the Merits........................................5

        A.    Defendants' articulated interest is patently unconstitutional ...............5

        B.    Defendants' use of race is not narrowly tailored .................................8

    III.    Mrs. Jimenez Faces Likely Irreparable Harm...............................................11

    IV.    The Balance of Equities Favors Enjoining Unconstitutional Racial Classifications ........................................................................................11

CONCLUSION ...............................................................................................12

CERTIFICATE OF COMPLIANCE ......................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adarand Constructors, Inc. v. Peña*,
   515 U.S. 200 (1995)...................................................................................5, 8

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ..............................................................11

*Borja v. Nago*,
   115 F.4th 971 (9th Cir. 2024) ...................................................................2

*Hunter ex rel. Brandt v. Regents of Univ. of Cal.*,
   190 F.3d 1061 (9th Cir. 1999) ............................................................9–10

*Brewster v. City of Los Angeles*,
   672 F. Supp. 3d 872 (C.D. Cal. 2023) ........................................................4

*Bush v. Vera*,
   517 U.S. 952 (1996)...................................................................................8–9

*Carroll v. Nakatani*,
   342 F.3d 934 (9th Cir. 2003) ....................................................................2

*Desert Outdoor Adver., Inc. v. City of Moreno Valley*,
   103 F.3d 814 (9th Cir. 1996) ....................................................................3

*Dragovich v. U.S. Dep't of the Treasury*,
   764 F. Supp. 2d 1178 (N.D. Cal. 2011).......................................................3

*Fed. Election Comm'n v. Cruz*,
   596 U.S. 289 (2022).....................................................................................5

*Fisher v. University of Tex. at Austin*,
   570 U.S. 297 (2013).............................................................................5–6, 10

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982).....................................................................................6

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) .................................................................2, 11

*Hill v. Colorado*,
530 U.S. 703 (2000)..................................................................................6–7

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
452 U.S. 264 (1981)....................................................................................7

*PJ ex rel. Jensen v. Wagner*,
603 F.3d 1182 (10th Cir. 2010) ..................................................................6

*Johnson v. California*,
543 U.S. 499 (2005)..................................................................................10

*Jones v. Bock*,
549 U.S. 199 (2007)....................................................................................4

*Lira v. Herrera*,
427 F.3d 1164 (9th Cir. 2005) ....................................................................4

*Louisiana v. Callais*,
No. 24–109, 2026 WL 1153054 (U.S. Apr. 29, 2026) .........................................7

*Madsen v. Boise State University*,
976 F.2d 1219 (9th Cir. 1992) ....................................................................3

*Miller v. Johnson*,
515 U.S. 900 (1995)....................................................................................6

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v.
City of Jacksonville*,
508 U.S. 656 (1993)............................................................................2–3, 11

*Nuziard v. Minority Bus. Dev. Agency*,
721 F. Supp. 3d 431 (N.D. Tex. 2024) .........................................................9

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007)............................................................................5–6, 10–11

*Patsy v. Bd. of Regents of State of Fla.*,
457 U.S. 496 (1982)....................................................................................4

*Porter v. Nussle*,
534 U.S. 516 (2002)....................................................................................4

*Regents of Univ. of Cal. v. Bakke,*
    438 U.S. 265 (1978)...........................................................................................7

*Richmond v. J. A. Croson Co.,*
    488 U.S. 469 (1989)...............................................................................7–8, 10

*Shaw v. Hunt,*
    517 U.S. 899 (1996)...........................................................................................7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
    600 U.S. 181 (2023).................................................................................*passim*

*Taniguchi v. Ashcroft,*
    303 F.3d 950 (9th Cir. 2002) .............................................................................3

## INTRODUCTION

Plaintiff Erica Jimenez respectfully replies in support of her motion for preliminary injunction ("MPI"), ECF No. 13, to the responses filed by Defendants Dr. Barbara Ferrer and Los Angeles County Department of Public Health ("County Opp."), ECF No. 24, and Dr. Erica Pan ("Pan Opp."), ECF No. 28. Mrs. Jimenez does not seek to "gut and restructure" the Black Infant Health Program ("BIH") as Defendants contend. County Opp. at 3. She seeks only to enjoin Defendants from implementing racial eligibility criteria for participation in a public benefits program. ECF No. 13 at 2.

Yet Defendants' oppositions repeatedly oscillate between denying that BIH employs race-based eligibility criteria at all and insisting that race-conscious participant selection is essential to the program's effectiveness. Compare Pan Opp. at 19–20 with *id.* at 25–27 and County Opp. at 18–20. Defendants cannot simultaneously maintain that race plays no role in participation decisions while also defending the necessity of race-conscious administration under strict scrutiny. Nor do Defendants meaningfully confront the constitutional defect at the center of this case: BIH distributes government benefits through explicit racial classifications justified primarily by generalized demographic disparities and race-based assumptions untethered to narrowly tailored criteria.

Because Defendants fail to establish either a compelling governmental interest recognized by Equal Protection doctrine or narrow tailoring sufficient to survive strict scrutiny, preliminary injunctive relief remains warranted. Additionally, because Mrs. Jimenez continues to suffer irreparable constitutional injury, because the requested relief would leave Defendants free to continue race-neutral maternal-health programming, and because the public interest favors compliance with the

Equal Protection Clause and Title VI, the Court should grant the requested preliminary injunction.

### I.   Mrs. Jimenez Has Standing

"The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *see also Carroll v. Nakatani*, 342 F.3d 934, 941 (9th Cir. 2003). A plaintiff has Article III standing to challenge ineligibility for government benefits if she "contend[s] that [her] ineligibility is due to unconstitutional discrimination." *Borja v. Nago*, 115 F.4th 971, 977 (9th Cir. 2024).

Defendants' imposition of their programs' racial eligibility criterion constitutes a deprivation of Mrs. Jimenez's constitutional right to equal protection, which is unquestionably an injury. Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("MPI Mem."), ECF No. 13-6, at 17; *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). She suffered that injury when she submitted her interest form to Pasadena's program. Class Action Complaint ("Compl."), ECF No. 1 ¶¶ 28–33. And she will continue to suffer that injury until Defendants' use of race for eligibility determinations is enjoined.

Defendants' argument that Mrs. Jimenez has not suffered an injury in fact relies on four assertions, none of which are relevant to her injury of unequal access. First, that Mrs. Jimenez did not submit an application that was not available to her. Pan Opp. at 16–17; County Opp. at 14–15. Second, that she did not avail herself of vague and discretionary exception procedures of which no one but Defendants is aware. County Opp. at 12–13, 14–15; Pan Opp. at 13–14, 17–18. Third, that she was "never actually denied services." County Opp. at 14; *see also* Pan Opp. at 16–18.

And fourth, that she has alternative programs available to her. County Opp. at 15, 23–24; Pan Opp. at 13–14, 18, 28–29.

But these arguments fundamentally misapprehend Equal Protection standing doctrine. And none of them defeat the obvious: that Mrs. Jimenez was compelled to disclose her race as a condition of eligibility screening and was then screened out of the program by these eligibility requirements. Compl. ¶¶ 31–33; Declaration of Erica Jimenez ("Jimenez Decl.") ¶¶ 1–5, ECF No. 13-5.

Contrary to Defendants' mischaracterization that Mrs. Jimenez has only made bare assertions that she is "ready and able" to apply, County Opp. at 14, Mrs. Jimenez took the initial step of applying to Pasadena's BIH program by submitting her information via the program's "Interest / Eligibility Form." Jimenez Decl. ¶ 3. While there may be several *more* steps beyond the public-facing first step, Pan Opp. at 16–17; County Opp. at 12, 14, those further steps do not negate Mrs. Jimenez's demonstrated interest and subsequent action. And even so, because the injury in equal protection cases is the imposition of the barrier—not the ultimate inability to obtain the benefit—there is no requirement to apply.[1] *See Ne. Fla. Chapter*, 508 U.S. at 666.

Even accepting Defendants' characterization of events and their policies, no genuine ambiguity as to her properly conceived injury exists here. The very

---

[1] The Ninth Circuit has consistently found that plaintiffs have standing even if they did not formally apply to the challenged program. *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996); *Taniguchi v. Ashcroft*, 303 F.3d 950, 957 (9th Cir. 2002); *see also Dragovich v. U.S. Dep't of the Treasury*, 764 F. Supp. 2d 1178, 1185–86 (N.D. Cal. 2011) (court finding that a failure to apply to the challenged program was not necessary for standing when the program's exclusionary policies were obvious).

Conversely, the Ninth Circuit has denied standing where the failure to apply introduced ambiguity in the dispute. *See Madsen v. Boise State University*, 976 F.2d 1219 (9th Cir. 1992) (court was uncertain as to the nature of the dispute when plaintiff took no action to confront the challenged policy). There is no such ambiguity in the issues presented here that further action by Mrs. Jimenez would "sharpen." *Id.* at 1221.

---

Pl.'s Reply in Supp. of Mot. for Prelim. Inj.          3          No. 2:26-cv-03500-SPG-SP

existence of a discretionary "exception procedure" for applicants who do not belong to the program's favored racial group confirms that race operates as a barrier to equal access. A program does not create special mechanisms to admit members of disfavored races unless race is already functioning as a threshold eligibility criterion. Defendants' insistence that Mrs. Jimenez ought to have availed herself of additional unpublicized exception procedures only further concretizes her injury of unequal access.

Defendants do not publicize their still undefined and discretionary exception procedures, and yet they claim that Mrs. Jimenez's failure to exhaust them is fatal to her standing. County Opp. at 12–13, 14–15; Pan Opp. at 13–14, 17–18. These procedures not only affirm her injury of unequal access as explained above, but there is a "general rule that federal courts cannot require exhaustion under § 1983." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 512 (1982); *see also Porter v. Nussle*, 534 U.S. 516, 523 (2002) (plaintiffs suing under § 1983 "need not exhaust administrative remedies before filing suit in court"); *Jones v. Bock*, 549 U.S. 199, 212 (2007) (Section 1983 "does not require exhaustion at all"); *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("exhaustion is not a prerequisite to an action under § 1983" (quoting *Patsy*, 457 U.S. at 501)).

Equally important is "how Defendants *told* the public and [putative] class members it work[s]." *Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 971 (C.D. Cal. 2023) (emphasis in original). Every public-facing description of the program communicates that eligibility is conditioned on race, and therefore that access is unequal because of it. Compl. ¶¶ 20–24 (describing statewide BIH eligibility as limited to "all Black women," Los Angeles County eligibility as limited to "[p]regnant African American women," and Pasadena eligibility as limited to individuals who "identify as black or African American").

Finally, the alleged availability to Mrs. Jimenez of alternative programs negates neither her injury nor Defendants' role in causing it. The injury here is

unequal access to BIH, not the ultimate availability of some other government benefit. Providing an available "alternative" for a litigant to pursue does not excuse the government from liability for violating constitutional rights. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022) ("[d]emanding that the [litigant] comply with the Government's 'alternative' would therefore require it to forgo [its constitutional right that the court] must assume it has").

**II.    Mrs. Jimenez Is Likely to Succeed on the Merits**

Mrs. Jimenez is likely to succeed in proving that Defendants' racial classifications fail strict scrutiny because Defendants have reframed racial balancing as public health, while employing race-based stereotypes and classifications without any logical endpoint. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 214–22 (2023) (*SFFA*).

"[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995). Defendants, by their own admission of the exception procedures, admit that BIH "distributes burdens or benefits on the basis of individual racial classifications." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007). Therefore, the use of the classifications must survive the "daunting two-step examination": (1) does the use further compelling government interests; and (2) is the use "'narrowly tailored'— meaning 'necessary'—to achieve that interest." *SFFA*, 600 U.S. at 206 (quoting *Fisher v. University of Tex. at Austin*, 570 U.S. 297, 311–312 (2013)).

**A. Defendants' articulated interest is patently unconstitutional**

Defendants have not articulated a compelling interest sufficient to justify the racial classifications employed here. Although Defendants invoke broad concepts like "health," "safety," and "child welfare," the interest actually advanced throughout their briefing is reducing disparities between racial groups and closing the "Black-White gap" in maternal and infant outcomes. *See* County Opp. at 5–8,

18–20; Pan Opp. at 10–13, 21–25. Defendants admit that the program's endpoint is the elimination of this disparity itself. County Opp. at 20–21. Properly understood, that is an interest in racial balancing through race-conscious administration.

The Supreme Court has consistently rejected racial balancing as a compelling governmental interest. *See Parents Involved*, 551 U.S. at 726 (racial balancing "condemned as illegitimate"); *SFFA*, 600 U.S. at 217–23 (racial balancing is "patently unconstitutional" (quoting *Fisher*, 570 U.S. at 311)). The Equal Protection Clause does not permit the government to classify individuals by race whenever officials identify unequal statistical outcomes between racial groups. That is because the guarantee of equal protection commands that the government "must treat citizens as individuals, not as simply components of a racial, religious, sexual or national class." *SFFA*, 600 U.S. at 223 (quoting *Miller v. Johnson*, 515 U.S. 900, 911 (1995)). Were it otherwise, strict scrutiny would impose little meaningful constraint whenever state officials invoke disparities in health, education, poverty, incarceration, or other high-level government interests. Defendants' own framing instead mirrors the type of demographic outcome management the Supreme Court explicitly rejected in *Parents Involved* and *Students for Fair Admissions*. When BIH screens eligibility or imposes "exception procedures" based on an applicant's race, Defendants are treating her as a component of a racial class, all in furtherance of a goal that dismisses her individual risk profile.

The mismatch between Defendants' asserted interest and their cited authorities confirms the point. The cases Defendants rely upon involve protecting specific individuals from concrete and immediate harms—not governmental management of demographic disparities through explicit racial classification. *PJ ex rel. Jensen v. Wagner* pertained to emergency medical decision-making concerning a specific child suffering from cancer. 603 F.3d 1182, 1198 (10th Cir. 2010). *Globe Newspaper Co. v. Superior Court* involved protecting specific minor victims of sexual assault from the trauma of public testimony. 457 U.S. 596, 607 (1982). *Hill*

*v. Colorado* concerned content-neutral buffer-zone regulations protecting patient access to healthcare facilities—not race-based classifications. 530 U.S. 703, 715 (2000). And *Hodel v. Virginia Surface Mining & Reclamation Ass'n* addressed emergency administrative action necessary to protect the public from imminent environmental and safety harms. 452 U.S. 264, 300 (1981). None of these authorities sanction governmental racial classifications justified by generalized demographic disparities among racial groups.[2]

Defendants are nonetheless persistent in ignoring clear Supreme Court authority and precedent, arguing that the limited exceptions to equal protection that *SFFA* set forth only apply to racial preferences in school admissions, and not a purportedly "forward-looking public health intervention." County Opp. at 21. But nothing in *SFFA* indicates that the equal protection analysis is limited in the way Defendants want it to be. *SFFA* cites *Shaw v. Hunt*, 517 U.S. 899, 909–10 (1996), a redistricting case, to reiterate that the only applicable compelling interest in racial classifications is to remedy specific, identified instances of prior discrimination. 600 U.S. at 207. *SFFA* cites *Richmond v. J. A. Croson Co.*, 488 U.S. 469, 505–06 (1989), a government contracting case, to emphasize that alleviating the effects of societal discrimination is not a compelling interest. 600 U.S. at 226. The Supreme Court has repeated *SFFA*'s limited compelling interests in another redistricting case, *Louisiana v. Callais*, No. 24–109, 2026 WL 1153054, at *10 (U.S. Apr. 29, 2026). *SFFA*'s application of the same strict scrutiny framework across multiple contexts is no

---

[2] Defendants also rely on *Bakke*'s dicta observation that "facilitating the health care of its citizens" could be a "sufficiently compelling" interest "to support the use of a suspect classification." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 310 (1978). But that narrow and conditional statement does not establish a freestanding rule that generalized public-health objectives automatically justify racial classifications. To the contrary, *Bakke* itself invalidated the challenged racial classification and repeatedly warned against the use of race to allocate benefits based on broad demographic objectives. *Id.* at 307–10. The Supreme Court's later explicit rejection of racial balancing clarifies that a compelling government interest cannot be supported by population-level disparities.

Pl.'s Reply in Supp. of Mot. for Prelim. Inj.        7        No. 2:26-cv-03500-SPG-SP

accident. That is because "[e]liminating racial discrimination means eliminating all of it." *SFFA*, 600 U.S. at 206. BIH is no exception.

### B. Defendants' use of race is not narrowly tailored

Defendants invoke "empirical fact" to defend the program's use of race. County Opp. at 18–19; *see also* Pan Opp. at 11–13. But the existence of statistical disparities between racial groups does not itself establish that explicit racial classifications are narrowly tailored. Strict scrutiny requires more than evidence that disparities exist. It requires proof that the government's use of race is necessary and precisely fitted to the asserted interest. *SFFA*, 600 U.S. at 206. Nor does the constitutional concern arise only when classifications are motivated by hostility or overt prejudice. *Croson*, 488 U.S. at 500 (racial classifications are suspect even when enacted for a "benign" or "legitimate purpose."); *Adarand*, 515 U.S. at 227 ("all racial classifications . . . must be analyzed by a reviewing court under strict scrutiny"). Strict scrutiny applies precisely because government racial classifications risk treating individuals as representatives of racial groups rather than as individuals. *SFFA*, 600 U.S. at 223 (equal protection commands that the government treat citizens as individuals).

Defendants' own theory illustrates the problem. They repeatedly move from statistical observations about population-level disparities to assumptions about which individuals should receive race-conscious programming. County Opp. at 1–2, 5–10, 18–22; Pan Opp. at 10–14, 22–27. But statistical disparities between racial groups do not eliminate the constitutional requirement for individualized governmental decision-making. *SFFA*, 600 U.S. at 223. The leap Defendants keep making is precisely why racial classifications are constitutionally suspect. Even if certain disparities disproportionately affect black women as a group, race remains a proxy for the individualized experiences, stressors, cultural backgrounds, socio-economic conditions, and healthcare barriers Defendants claim to target. *Bush v.*

*Vera*, 517 U.S. 952, 968 (1996) (using race as a proxy and stereotype triggers strict scrutiny).

Defendants' reliance on sickle-cell anemia and Tay-Sachs hypotheticals only underscores the absence of narrow tailoring here. County Opp. at 18–19; Pan Opp. at 26. Those examples involve tightly connected medical or research contexts in which the causal mechanism for the disorder is known: the disorders themselves are directly associated with identifiable hereditary and population-based genetic mechanisms. *Hunter ex rel. Brandt v. Regents of Univ. of Cal.*, 190 F.3d 1061, 1066 n.11 (9th Cir. 1999); *Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431, 491 (N.D. Tex. 2024); *Bush*, 517 U.S. at 984. BIH, by contrast, is not a genetic screening program, disease-specific treatment protocol, or controlled research study. It is a broadly administered public-benefits program justified by generalized demographic disparities and sociological propositions untethered to any similarly precise causal mechanism. *See* County Opp. at 4–10, 18–22; Pan Opp. at 10–14, 22–27.

Defendants' oppositions ultimately confirm—not rebut—the constitutional defect at the center of this case. Defendants repeatedly justify BIH through explicit reliance on racial classifications, racialized outcome disparities, and generalized assumptions about race, culture, stress, and lived experience. Yet they fail to identify a compelling governmental interest recognized by Equal Protection doctrine or demonstrate that their use of race is narrowly tailored to any such interest. Instead, the record demonstrates precisely what strict scrutiny is designed to prevent: the allocation of governmental benefits based on broad racial categories untethered to individualized criteria. Mrs. Jimenez is therefore likely to succeed on the merits of her Equal Protection and Title VI claims.

The supremacy that Defendants place in the judgment of public health authorities does not satisfy narrow tailoring. The Supreme Court has consistently held that experts and academics are not given complete deference on whether a racial

classification is necessary. *Parents Involved*, 551 U.S. at 744 (Rejecting deference to local school boards' knowledge and expertise on the need for racial classifications as "fundamentally at odds with our equal protection jurisprudence." (quoting *Johnson v. California*, 543 U.S. 499, 506 n.1 (2005)); *Croson*, 488 U.S. at 501 ("[B]lind judicial deference to legislative or executive pronouncements of necessity has no place in equal protection analysis."); *Fisher*, 570 U.S. at 311 ("[T]he University receives no deference" on whether the means it chooses to achieve diversity are narrowly tailored.); *SFFA*, 600 U.S. at 217 (no deference to universities outside of constitutionally prescribed limits).

*Hunter* does not support the Defendants' deference to experts for demonstrating narrow tailoring. *See* 190 F.3d at 1066–67. *Hunter* predates the Supreme Court's decisions in *Parents Involved*, *Fisher*, and *SFFA* that courts owe no deference to experts on whether race-conscious measures are essential. And although the Ninth Circuit in *Hunter* recognized the reasons asserted by academic researchers for utilizing racial classifications, it did not defer to them on whether such classifications were necessary and survived constitutional scrutiny. 190 F.3d at 1066–67. Subsequent cases of the Supreme Court reiterated that independent judicial review, and not the insistence of experts, ultimately determines whether a race-conscious program satisfies strict scrutiny.

Meanwhile, despite BIH's 37-year existence, Defendants warn that recent data still shows the mortality rates for Black infants remain higher than that of white infants, and pregnancy related mortality rates for Black mothers remain higher than that of white mothers. County Opp. at 17–18. The persistence of the problem that BIH purports to address despite its race-conscious intervention demonstrates that racial classifications are not necessary. "The minimal impact of [Defendants'] racial

classifications . . . casts doubt on the necessity of using racial classifications." *Parents Involved*, 551 U.S. at 734.

Because ongoing constitutional injury constitutes irreparable harm, and because the requested injunction is narrow and would leave Defendants free to continue race-neutral maternal-health programming, the remaining *Winter* factors likewise favor preliminary relief.

**III.     Mrs. Jimenez Faces Likely Irreparable Harm**

Defendants' irreparable-harm arguments merely restate their flawed merits and standing arguments. County Opp. at 22–25; Pan Opp. at 28–30. Because Mrs. Jimenez is likely to succeed on her Equal Protection and Title VI claims, the ongoing deprivation of her constitutional rights constitutes irreparable injury. *Hernandez*, 872 F.3d at 994; *see also Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1416 (9th Cir. 1991).

Defendants incorrectly characterize Mrs. Jimenez's injury as the denial of particular maternal-health services. But the injury to Mrs. Jimenez is the unequal access to BIH because of her race, not medical or emotional harm. *Ne. Fla. Chapter*, 508 U.S. at 666. Nor does the existence of alternative programs defeat the irreparable harm of racial discrimination. The government may not impose racial barriers to one program and insulate itself from scrutiny by directing disfavored applicants elsewhere. The constitutional injury is unequal access itself. *Id.*

Because Mrs. Jimenez continues to face unequal treatment based on race in her access to the BIH program, irreparable harm is ongoing absent injunctive relief.

**IV.     The Balance of Equities Favors Enjoining Unconstitutional Racial Classifications**

Defendants' balance-of-equities argument rests on the same contradiction that pervades their merits briefing. On one hand, Defendants insist that BIH does not actually exclude or deny participation based on race and that non-black participants may be admitted through discretionary exceptions. Pan Opp. at 19–20, 26–27;

---

Pl.'s Reply in Supp. of Mot. for Prelim. Inj.          11          No. 2:26-cv-03500-SPG-SP

County Opp. at 12–13, 19–20. On the other hand, Defendants argue that enjoining race-based eligibility criteria would fundamentally alter the program and undermine its effectiveness. County Opp. at 2–3, 23–24; Pan Opp. at 13–14, 25–27, 29. Both propositions cannot simultaneously be true.

Mrs. Jimenez does not seek to dismantle BIH, prohibit maternal-health programming, or eliminate support services. And although Defendants repeatedly blur the distinction between race and culture (County Opp. at 8–10, 23; Pan Opp. at 10–14, 25–27), the two are not synonymous. Any culturally tailored outreach or programming could therefore continue unaffected on a race-neutral basis. Mrs. Jimenez seeks only to enjoin Defendants from conditioning access to a public-benefits program on race. If, as Defendants repeatedly contend, BIH already permits participation irrespective of race, then the requested injunction would merely require Defendants to operate the program in the manner they claim it already functions.

Defendants remain free to pursue race-neutral measures to improve maternal and infant health outcomes, including outreach, support services, stress-reduction programming, geographic targeting, socioeconomic criteria, and culturally tailored voluntary programming.

By contrast, denying preliminary relief would permit ongoing use of explicit racial classifications in the administration of public benefits. The balance of equities and public interest therefore favor injunctive relief.

## CONCLUSION

The Court should grant Plaintiff's motion for a preliminary injunction.

DATED: May 13, 2026.

Respectfully submitted,


ANDREW R. QUINIO
SAMANTHA R. ROMERO-DREW
Pacific Legal Foundation

By s/ *Andrew R. Quinio*
    ANDREW R. QUINIO


*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Erica Jimenez, certifies that this brief contains 3,703 words, which complies with the word limit of L.R. 11-6.1.

DATED: May 13, 2026.

By s/ *Andrew R. Quinio*
ANDREW R. QUINIO